## NATIONAL LABOR RELATIONS BOARD v. McLAIN FIRE BRICK CO.

### No. 7957.

Circuit Court of Appeals, Third Circuit.

Argued April 10, 1942.

Decided May 12, 1942.

Henry Shore, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, and William K. Sherwood, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Seward H. French, Jr., of Pittsburgh, Pa. (John C. Bane, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for respondent.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

This matter is here on petition of the National Labor Relations Board for a decree enforcing its order against the respondent. The order was entered conformably with Sec. 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. after a hearing upon the Board's complaint which had been filed pursuant to charges made by the United Brick & Clay Workers of America, an affiliate of the American Federation of Labor. The complaint alleged that the respondent engaged in and was engaging in unfair labor practices contrary to Sec. 8(1) and (2) of the National Labor Relations Act and that such practices affected commerce within the meaning of Sec. 2(6) and (7) of the Act.

The respondent concedes (Respondent's Brief, p. 1) that the questions involved are,

as stated by the Board, viz., "(1) Are the Board's findings that respondent engaged in unfair labor practices in violation of Section 8(1) and (2) of the Act supported by substantial evidence, and (2) is the Board's order valid and proper?"

The Board's ultimate conclusions that the respondent dominated and interfered with the administration of the Plan of Employee Representation (a local labor organization) and contributed to its support and that the respondent also interfered with, restrained and coerced its employees in the exercise of the rights guaranteed by Sec. 7 of the Act were reasonable inferences from the facts found by the Board; and, in our opinion, the facts so found are supported by substantial evidence which is fully reviewed and weighed in the Board's opinion and need not be repeated here in detail.

The case presents no new or unusual situation. The most that the respondent urges is that the Plan of Employee Representation came into being (June, 1933, contemporaneously with the passage of the National Industrial Recovery Act, 48 Stat. 195) as the spontaneous fruition of the employees' desires in such regard; that, unlike the Plan of Employee Representation then in general favor,[1] the Plan at the respondent's plants did not allow for management veto or amendment; that it seemed to have the approval of a majority of the employees, and was an effective bargaining representative. Nevertheless the evidence shows that the suggestion that the employees should elect representatives came from Dando, the respondent's vice president and general manager, who had sole charge of the respondent's labor relations; that he was present at the ensuing meeting of employees held in the Dando plant on a Sunday for the purpose of forming a local union; that he suggested that representatives be selected from plant divisions or departments; that he and others of respondent's officials drafted the by-laws for the local organization and gave it its name; that the Plan was otherwise shown company favor; and that Dando evidenced his concept of the Plan's subservience to the management by accrediting and treating with another labor organization in another of the respondent's plants without intimating to the Plan's representatives either the occasion or need for the change. These are but some of the evidences of company interest and preference which the record discloses in respect of the respondent's attitude toward employee representation.

The respondent's labor policy as evidenced by its conduct prior to the enactment of the National Labor Relations Act on July 5, 1935, is material to the question of the intent of its action after and under that enactment. Cf. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; Roebling Employees Ass'n, Inc., v. National Labor Relations Board, 3 Cir., 120 F.2d 289. In the light of the respondent's past conduct in respect of its relation toward its employees' exercise of the right to bargain collectively by a representative of their own choosing, the confirmation of that right by the National Labor Relations Act made the respondent's situation such as to require its plain and open disavowal of any intention thenceforth to continue its interference, domination or coercion in the matter of its employees' representation. Westinghouse Electric & Mfg. Co. v. National Labor Relations Board, 2 Cir., 112 F.2d 657, 660, affirmed per curiam 312 U.S. 660, 61 S.Ct. 736, 85 L.Ed. 1108; Roebling Employees Ass'n, Inc., v. National Labor Relations Board, supra, 120 F.2d at page 295. There was no such disavowal in this case. The events which occurred subsequently to the Board's order and to which the respondent now points as evidencing a change of attitude in its labor policy are not relevant to prove that the Board's order has thereby become anachronic. If valid when made, it continues to be the Board's authentic exercise of its discretion. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., supra, 303 U.S. at page 271, 58 S.Ct. 571, 82 L.Ed.

---

[1] This court has noted several times the widespread adoption of the plan of employee representation by iron and steel companies throughout the country immediately following the enactment of the National Industrial Recovery Act. See Roebling Employees Ass'n, Inc., v. National Labor Relations Board, 3 Cir., 120 F.2d 289, 290; Republic Steel Corp. v. National Labor Relations Board, 3 Cir., 107 F.2d 472, 474. While the respondent in the instant case was neither an iron nor steel company, its contact with such companies was intimate and direct as they furnished the largest market for the respondent's product.

831, 115 A.L.R. 307. See, also, National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 249, 250, 60 S.Ct. 203, 84 L.Ed. 219.

The facts which the Board was free to accredit in this case well justify its conclusion that the Plan of Employee Representation was wished upon the employees by the management and, so, was subject to the respondent's dominance, interference and control with corresponding restraint upon the employees in the exercise of their statutorily recognized rights. The Board's consequent order directing the respondent to cease and desist from the unfair labor practices found, to take certain affirmative action in such regard for the future, and to post the customary notices of intention to comply, was appropriate to the Board's ultimate findings.

A decree enforcing the Board's order will be entered.